WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SUMNER COMPANY,              )
                             )
                 Plaintiff,  )
                             )
   vs.                       )
                             )
NICK JORDAN, et al.,         )
                             )   No. 3:21-cv-0127-HRH
                 Defendants. )
_____)

O R D E R

Motion for Partial Summary Judgment

Defendant Nick Jordan moves for partial summary judgment.[1] This motion is opposed by plaintiff Sumner Company ("Sumner").[2] Oral argument was not requested and is not deemed necessary.

Facts

In the spring of 2020, Jordan contacted Sumner about the possibility of Sumner building a house for him. Jordan was familiar with Sumner's work because Sumner had built a house for Jordan's parents. Jordan selected a Sumner design known as the Sanford. Jordan

---

[1]Docket No. 54.

[2]Docket No. 61.

then provided ideas to Sumner of changes he would like to make to the plan, with a final modified plan being completed on April 11, 2020. Both the original Sanford plan and the modified Sanford plan were copyrighted by Sumner.

Sometime in late April/early May of 2020, some difficulties with the financial arrangements arose, and Jordan did not move forward with the Sumner build. Instead, Jordan's realtor set him up with another builder, co-defendants Alaska Custom Homebuilders, LLC; and Agim Delolli (collectively referred to herein as "Delolli"). Jordan gave Delolli a copy of the modified Sanford plan. Jordan testified that he "discussed with [Delolli] that this was kind of the generic layout that we were looking for."[3] Jordan stated that Delolli "informed me that he would not build someone else's plan out of legal considerations of course, but also out of respect for that builder[.]"[4] Jordan stated that he and Delolli reached a "conclusion ... that we needed to change the existing plan by 25% in order to make it acceptable to use."[5]

Delolli began constructing a house for Jordan in June 2020. The house was completed in February of 2021.

Sumner became aware of the Delolli plan for Jordan's house in April 2020. Mr. Sumner testified that another builder saw a copy of the Delolli plan "on the desk of a lumber

---

[3]Deposition via Videoconference of John Nicholas Jordan at 23:3-4, Exhibit 2, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[4]Exhibit 4 at 2, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[5]Id.

salesman and immediately recognized it as our plan."[6] The other builder took a photo of the Delolli plan and sent it to Mr. Sumner.[7]

On May 26, 2021, Sumner commenced this action. In its first amended complaint, Sumner asserts three claims against Jordan: 1) copyright infringement, 2) trade secret misappropriation, and 3) breach of an implied-in-fact contract.

Jordan now moves for summary judgment on all of plaintiff's claims asserted against him.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual

---

[6]Deposition of Maxwell Harrison Sumner at 129:1-3, Exhibit 5, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[7]Id. at 129:4-6.

facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

As an initial matter, Sumner concedes that Jordan is entitled to summary judgment on the trade secret misappropriation claim and the breach of the implied-in-fact contract claim.[8] Jordan's motion for summary judgment on these claims is granted.

Turning then to the copyright infringement claim, Sumner alleges that Jordan infringed its copyright for the modified Sanford plan. "'To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Gray v. Hudson, 28 F.4th 87, 96 (9th Cir. 2022) (quoting Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991)).

Jordan does not argue that Sumner cannot meet the first element, presumably because a copyright registration "'constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate.'" Desire, LLC v. Manna Textiles, Inc., 986 F.3d 1253, 1259 (9th Cir. 2021) (quoting 17 U.S.C. § 410(c)). As set out above, Sumner has a copyright registration for the modified Sanford plan.

---

[8]Opposition to Motion for Partial Summary Judgment at 28, Docket No. 61.

Jordan does argue that Sumner cannot meet the second element of a copyright infringement claim, the copying element. "A plaintiff may establish copying through direct or circumstantial evidence." Moement, Inc. v. Groomore, Inc., Case No. 2:22-cv-02871-MWF (JEMx), 2022 WL 18284405, at *7 (C.D. Cal. Nov. 29, 2022).

Jordan argues that this is a circumstantial evidence case. In such a case, the plaintiff "can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar." Folkens v. Wyland Worldwide, LLC, 882 F.3d 768, 774 (9th Cir. 2018). "Summary judgment is 'not highly favored' on questions of substantial similarity, but it is appropriate if" the court can "conclude that 'no reasonable juror could find substantial similarity of ideas and expression.'" Id. (quoting Shaw v. Lindheim, 919 F.2d 1353, 1355 (9th Cir. 1990)).

There is no dispute that Jordan had access to the modified Sanford plan, and he may have even had a high degree of access, as Sumner contends. If Jordan had a high degree of access, Sumner argues that means that the "inverse ratio rule" applies here. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000). Under this rule, the court "require[s] a lower standard of proof of substantial similarity when a high degree of access is shown." Id. (citation omitted). However, the Ninth Circuit has abrogated the inverse ratio rule. See Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin, 952 F.3d 1051, 1069 (9th Cir. 2020) ([a]lthough we are cautious in overruling precedent—as we should be—the constellation of problems and inconsistencies in the application of the inverse ratio

rule prompts us to abrogate the rule"). While Jordan may have had a high degree of access to the modified Sanford plan, that access has no bearing on the question of whether the Delolli plan was substantially similar to the modified Sanford plan.

Courts in the Ninth Circuit "use a two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work." Id. at 1064. This two-part test has "extrinsic and intrinsic components." Gray, 28 F.4th at 96 (citation omitted). But, "[o]n summary judgment," the court "consider[s] only the extrinsic test...." Folkens, 882 F.3d at 774.

> The extrinsic test requires a three-step analysis: (1) the plaintiff identifies similarities between the copyrighted work and the accused work; (2) of those similarities, the court disregards any that are based on unprotectable material or authorized use; and (3) the court must determine the scope of protection ("thick" or "thin") to which the remainder is entitled "as a whole."

Corbello v. Valli, 974 F.3d 965, 974 (9th Cir. 2020) (quoting Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994)).

Sumner has identified the following similarities between the modified Sanford plan and the Delolli plan:

> [The] overall form and arrangement and composition of the spaces and elements in the design are identical. Including design notes and structural elements, room arrangement, roof form, garage door sizes, window sizes and locations, etc. Of particular note is the beam callouts and a structural beam that is

unnecessary for the building of the house that is present in both designs.[9]

At his deposition, when asked to identify the similarities, Mr. Sumner testified that the "overall plan is the same or very similar" and that "if you put one plan next to the other, it's pretty obvious that ... one was based on the other."[10] In other words, Sumner contends that the overall form and composition of the modified Sanford plan is substantially similar to the overall form and composition of the Delolli plan.

The second prong of the extrinsic test requires the court "to distinguish between the protected and unprotected material in a plaintiff's work.'" Skidmore, 952 F.3d at 1064 (quoting Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004)). More specifically, the court must determine whether any of the similarities identified by the plaintiff are based on "unprotectable material or authorized use." Corbello, 974 F.3d at 974. "Similarity only as to unprotected aspects of a work does not result in liability for copyright infringement." Id. "So, '[t]o determine whether similarities result from unprotectable expression, analytic dissection of similarities may be performed.'" Id. (quoting Data E. USA, Inc. v. Epyx, Inc., 862 F.2d 204, 208 (9th Cir. 1988)). "An analytical dissection ... requires breaking the works down into their constituent elements, and comparing those elements for proof of copying as

---

[9]Plaintiff's Response to Defendant Nick Jordan's First Set of Discovery Requests, Exhibit 1 at 8, Defendant Nick Jordan's Motion for Partial Summary Judgment, Docket No. 54.

[10]Sumner Deposition at 109:4-14, Exhibit 2, Defendant Nick Jordan's Motion for Partial Summary Judgment, Docket No. 54.

-7-

measured by 'substantial similarity.'" Williams v. Gaye, 895 F.3d 1106, 1119 (9th Cir. 2018) (citation omitted). The court may rely on expert testimony at this stage of the analysis. Id.

"Well-recognized precepts guide the process of analytic dissection." Apple Computer, 35 F.3d at 1444. Two such doctrines are "the doctrines of merger and scènes à faire." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). "Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." Id. "In such an instance, it is said that the work's idea and expression 'merge.'" Id. "Under the related doctrine of scènes à faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea[.]" Id.

Courts have applied the doctrine of merger to architectural plans. In Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 105 (2nd Cir. 2014), the court found that "[a]ny design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity should ... get no protection." Courts have also found that "[t]here are scènes-à-faire in architecture." Id. For example, "[n]eoclassical government buildings, colonial houses, and modern high-rise office buildings are all recognized styles from which architects draw. Elements taken from these styles should get no protection. Likewise, there are certain market expectations for homes or commercial

-8-

buildings. Design features used by all architects, because of consumer demand, also get no protection." Id.

Jordan offers the testimony of his expert, Brian Meissner, a registered architect, to aid the court in its analytic dissection of the similarities between the modified Sanford plan and the Delolli plan. Meissner explains that the modified Sanford plan is a "modern prairie-style" and that this style has many scenes-a-faire, including

- Relatively low slope hipped roofs (mostly in rural or suburban settings), and often flat roofs (mostly in urban settings)
- Wood or wood-look siding...
- A horizontal stone or stone-look base
- Open asymmetric floor plans
- Repeated windows in banks to create a horizontal look[.[11]]

Meissner opines that

> [t]he floor plans and massing of the "The Sanford" result from application of 'basic architectural elements,' attributable to the fact that 'the variety of ways a two-story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc. is finite[.] In simple terms, the rooms in the floor plan are what would be expected for a 2-story 4-bedroom house in current market conditions, and arrangement of the rooms is a result of current market forces and is not in itself unique.
>
> The exterior expression of "The Sanford," specifically roof forms, window type and window layout, are the result of applying scenes-a-faire attributable to the modern prairie style.

---

[11]Preliminary Findings and Opinions of Brian Meissner [etc.] at 2, Exhibit 3, Defendant Nick Jordan's Motion for Partial Summary Judgment, Docket No. 54.

> In basic terms, simple application of relatively low slope hipped roofs, repeated windows, and code-required egress windows will result in an exterior expression similar to "The Sanford". The exterior expression is not in itself unique.[12]

In short, Meissner's opinion is that the modified Sanford plan is comprised completely of elements determined by market demand or code requirements and elements that constitute scenes-a-faire, which would mean that the modified Sanford plan contains no protectable elements.

Sumner, however, argues that the court cannot consider Meissner's opinions because his expert report is hearsay. Sumner emphasizes that Jordan has only offered Meissner's expert report as evidence and that "Meissner's statements are not under affidavit, nor has he testified at a deposition in this matter."[13]

"Generally, expert reports are inadmissible hearsay." Salgado v. Iqvia, Inc., 459 F.Supp.3d 1318, 1327 (S.D. Cal. 2020). "But 'a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony[.]'" Id. (quoting JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1110 (9th Cir. 2016)). The opinions in Meissner's report could be offered as live testimony at trial. Moreover, an expert report "may be considered in evaluating a motion for summary judgment, where the expert swears to the substance of the report in an affidavit or declaration to which the report is attached." Huezo

---

[12]Id.

[13]Opposition to Motion for Partial Summary Judgment at 20, Docket No. 61.

-10-

Case 3:21-cv-00127-HRH   Document 63   Filed 02/22/23   Page 10 of 16

v. Los Angeles Community College Dist., Case No. CV 04-9772 MMM (JWJx), 2007 WL 7289347, at *2, n.18 (C.D. Cal. Feb. 26, 2007). Although Jordan failed to include an affidavit from Meissner with his opening brief, he corrected this problem by attaching an affidavit from Meissner to his reply brief. Meissner avers that his report "contains an accurate and truthful summary of my opinions and observations in this case" and that "[i]f called to testify at a trial in this matter, I will testify accurately and consistently with the contents of my expert report."[14] Thus, the court may consider Meissner's opinions in evaluating Jordan's motion for partial summary judgment.

But even if the court considers Meissner's opinions, Sumner argues that does not mean that there is not a question of fact as to whether the modified Sanford plan contained protectable elements. Sumner argues that there is at least a question of fact as to whether the modified Sanford plan is protectable as whole. "[W]hile individual standard features and architectural elements classifiable as ideas are not themselves copyrightable, an architect's original combination or arrangement of such features may be." Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1225 (11th Cir. 2008); see also, Lindal Cedar Homes, Inc. v. Ireland, Case No. Civ.03–6102–TC, 2004 WL 2066742, at *2 (D. Or. Sept. 14, 2004) ("[a]lthough the underlying unoriginal component parts of a creation are not subject to protection, a creator's selection and arrangement of these parts, where independently made,

---

[14]Affidavit of Brian Meissner at 1, ¶¶ 3-4, Exhibit 1, Defendant Nick Jordan's Reply in Support of Motion for Partial Summary Judgment, Docket No. 62.

is original and therefore copyrightable"). Sumner insists that the selection and arrangement of unprotected elements in the modified Sanford plan make the plan protectable as a whole.

The only evidence that Sumner offers in support of its argument that the modified Sanford plan as a whole is protectable is Jordan's statement that "[w]e looked at what feels like thousands of floor plans, and we still c[ame] back to this one from Sumner...."[15] Sumner argues that "[i]f the design was so non-unique like [Jordan's] expert suggests, Jordan would have found a replacement."[16]

Sumner's reliance on Jordan's statement about his preference for the Sumner design is misplaced because it is a subjective opinion on uniqueness. A subjective opinion might be considered as part of the intrinsic test, but it has no place in the court's extrinsic analysis. See Skidmore, 952 F.3d at 1064 (citation omitted) ("the intrinsic test[] test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance"). Thus, Sumner has failed to come forward with any evidence to support its contention that the overall form and composition of the modified Sanford plan is protectable. The only evidence on this issue is Meissner's opinion that the modified Sanford plan's overall form and composition is not protectable. Based on this evidence, no reasonable jury could conclude that there were protectable elements in the modified Sanford plan. And, if

---

[15]Exhibit 6 at 1, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[16]Opposition to Motion for Partial Summary Judgment at 23, Docket No. 61.

Case 3:21-cv-00127-HRH   Document 63   Filed 02/22/23   Page 12 of 16

there are no protectable elements in the modified Sanford plan, Sumner cannot prevail on its copyright infringement claim against Jordan.

But, even if there were a question of fact as to whether the overall form and composition of the modified Sanford plan could be considered protectable, Jordan would still be entitled to summary judgment on Sumner's copyright infringement claim. The third step of the extrinsic test requires the court to consider the scope of copyright protection for any protectable elements. "A copyright receives 'thick,' or broad, protection when the possible range of protectable expression is broad, such as when there are 'endless variations of expression available to the artist.'" Lorador v. Kolev, Case No. 2:21-cv-01650-GMN-BNW, 2022 WL 1051684, at *8 (D. Nev. March 10, 2022) (quoting McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 321 (9th Cir. 1987)). "In contrast, a copyright receives 'thin,' or narrow, protection 'when the range of protectable expression is narrow.'" Id. (quoting Apple Computer, 35 F.3d at 1446–47). "In general, copyrights involving a combination of otherwise individually unprotectable elements receive thin protection." Id.

Jordan argues, and Sumner does not dispute, that the modified Sanford plan would only be entitled to thin protection, which means that the Delolli plan "must be 'virtually identical' to infringe." Desire, LLC, 986 F.3d at 1260 (quoting Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913–14 (9th Cir. 2010)). Jordan's May 8, 2020, email to Delolli establishes that the Delolli plan is not virtually identical to the modified Sanford plan. This email outlined a number of changes to the modified Sanford plan that Jordan and Delolli

-13-

agreed upon, including moving the master bath wall 6 feet toward the rear of the house, making the office smaller and adding windows to it, moving the staircase to the left side of the entry, eliminating the entry closet, adding sliding glass doors to the porch, making the mudroom one foot deeper, shifting the laundry room and pantry to the right, moving the third garage door back 4 feet, rearranging the kitchen lay-out, and adding another door to the nook.[17] With all those changes having been made to the modified Sanford plan, no reasonable jury could conclude that the Delolli plan was virtually identical to the modified Sanford plan. Thus, even assuming that the modified Sanford plan contained protectable elements, Jordan would be entitled to summary judgment on Sumner's copyright infringement claim.

Sumner's argument that this is not a circumstantial evidence case, but rather a direct evidence case, cannot save its copyright infringement claim. "'Direct evidence of copying ... includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants.'" Edwards v. Cinelou Films, LLC, Case No. 2:16–cv–01014–ODW (AGRx), 2016 WL 9686986, at *3 (C.D. Cal. June 22, 2016) (quoting Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 537 (4th Cir. 2015)). There is direct evidence of copying in this case in the form of admissions by Jordan.[18] At his deposition, Jordan testified that he printed

---

[17]Exhibit 6 at 1, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[18]In connection with its direct evidence of copying argument, Sumner contends it does
(continued...)

out a copy of the modified Sanford plan and took it to his first meeting with Delolli.[19] Jordan also attached a copy of the modified Sanford plan to a May 5 email he sent to Delolli.[20] And, Jordan has stated that "we started with a floorplan from Sumner that grew into something else because of the ideas and changes that I put forth to begin with."[21]

But, contrary to Sumner's argument, that would not be the end of the matter. Sumner argues that if there is direct evidence of copying, the second element of a copyright infringement claim, the copying element, is met. But, Sumner is wrong. "Even where there is evidence of direct copying (as [Sumner] asserts here), the court must still determine the issue of whether the copying is actionable." Perry v. Zupan, Case No. CIV S-04-868 DFL EFB, 2007 WL 570260, at *4 (E.D. Cal. Feb. 21, 2007); see also, Brocade Communications Systems, Inc. v. A10 Networks, Inc., 873 F.Supp.2d 1192, 1218 (N.D. Cal. 2012) ("Where there is direct evidence of copying, ..., the only question on summary judgment is whether

---

[18](...continued)
not matter that Jordan and Delolli made changes to the modified Sanford plan because the changes would have resulted in a derivative work, which is an exclusive right held by the copyright owner. 17 U.S.C. § 106(2). And, Sumner argues that Jordan's contention that it was okay to use the Sumner design as long it was changed by at least 25% has no basis in law. These arguments, however, have nothing to do with the issue of whether there is direct evidence of copying in this case.

[19]Jordan Deposition at 23:21-24, Exhibit 2, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[20]Exhibit 6, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

[21]Exhibit 4 at 2, Opposition to Motion for Partial Summary Judgment, Docket No. 61.

-15-

the copied material is protected"). "'The mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author.'" Corbello, 974 F.3d at 973 (quoting Feist, 499 U.S. at 348). "Because only the original elements of a plaintiff's work are protected by copyright, the court must first identify, by a process of 'filtration,' those elements of the work that are protectible expression." Perry, 2007 WL 570260, at *4.

This filtration process is the same as the second prong of the extrinsic test which requires the court "'to distinguish between the protected and unprotected material in a plaintiff's work.'" Skidmore, 952 F.3d at 1064 (quoting Swirsky, 376 F.3d at 845). And, as discussed above, Meissner's testimony that the modified Sanford plan contained no protectable elements is unrebutted, and no reasonable jury could conclude that there were protectable elements in the modified Sanford plan. Thus, even if this were a direct evidence case, Jordan would be entitled to summary judgment on Sumner's copyright infringement claim because whatever was copied from the modified Sanford plan was not protected.

## Conclusion

Jordan's motion for partial summary judgment is granted. Sumner's claims which are asserted against Jordan are dismissed.

DATED at Anchorage, Alaska, this 22nd day of February, 2023.

/s/ H. Russel Holland
United States District Judge